IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
**(Memorandum Web Opinion)**

STATE V. WHEELER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JANUARY T. WHEELER, APPELLANT.

Filed November 1, 2022.    No. A-21-1036.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Timothy S. Noerrlinger, of Naylor & Rappl Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

January T. Wheeler appeals from his conviction and sentence on one count of possession of a firearm by a prohibited person. Following a jury trial in the district court for Lancaster County, Wheeler was found guilty of the above charge and sentenced to 25 to 30 years of incarceration. On appeal, Wheeler challenges the sufficiency of the evidence and the district court's rulings regarding the use of extrinsic evidence to impeach a witness. Wheeler also asserts the district court imposed an excessive sentence and raises five claims of ineffective assistance of trial counsel. For the reasons that follow, we affirm.

## II. BACKGROUND

This case revolves around a shooting incident which occurred at approximately 12:30 a.m. on December 6, 2020, at a house located on Blue Flame Road in Lincoln, Nebraska. The ensuing law enforcement investigation led to Wheeler's arrest and he was charged with first degree assault

(count 1), use of a firearm to commit a felony (count 2), and possession of a firearm by a prohibited person (count 3). After trial, a jury acquitted Wheeler on counts 1 and 2, and those charges are not at issue in this appeal. With respect to count 3, Wheeler stipulated that he had previously been convicted of a felony and was a person prohibited from possessing a firearm on or about December 6, 2020. Accordingly, the only question for the jury on count 3 was whether Wheeler possessed a firearm on or about that date.

On the night in question, law enforcement responded to three separate reports of arguing and gunshots in the area of Blue Flame Road. One of the calls came from a next-door neighbor, Kortney Jackson, who testified at trial that she heard people arguing outside just before 12:30 a.m. Jackson was prompted to call 911 when she heard someone say, "Do it, do it," followed by the sound of three gunshots in rapid succession.

Upon arrival, law enforcement officers located a trail of blood droplets extending from the end of the driveway to the front door of the home. The exigent circumstances justified a cursory search of the home, which revealed additional blood droplets inside. Outside the home, officers discovered four spent shell casings and one spent bullet. Officers also learned of an individual being treated for apparent gunshot wounds at a nearby hospital. This individual was later identified as Brandon Wagner. Wagner had three bullet wounds: one on the left side of his chest, one on the lower left side of his back, and a "grazing wound" on his upper back. Wagner survived his wounds but remained in the hospital for almost a month.

The evidence at trial revealed that a mutual friend, Kristian Hespen, introduced Wagner to Wheeler a couple weeks prior to the shooting, and the three men began working together to acquire and sell drugs. As part of this enterprise, Wagner gave Wheeler various items to either sell or exchange for drugs. Wagner estimated that the items were worth a total of approximately $400. It is unclear what happened to the items, but Wagner began to insist that Wheeler either pay for or return them. Tensions between Wagner and Wheeler continued to rise until the day of the shooting when Wagner confronted Wheeler at the house on Blue Flame Road.

When Wagner arrived at the house, his intentions were clear; "I was getting paid or we were fighting, one or the other." Wagner testified that he first encountered Hespen in the driveway of the home. After a brief exchange with Hespen, Wagner approached the front door of the home in search of Wheeler. According to Wagner, he opened the front door and immediately saw Wheeler holding a tan handgun with an extended clip. There was conflicting evidence as to precisely how the ensuing altercation played out; however, the record is clear that Wagner was ultimately shot three times, and both Wagner and Hespen positively identified Wheeler as the shooter. Wheeler was also injured in the altercation, and the trail of blood droplets discovered at the scene was later attributed to Wheeler.

Hespen testified that immediately after the shooting, while Hespen was helping Wagner into his car, Wheeler gave Hespen the gun and told him to "get rid of this." Hespen took the gun and later left it in an apartment located on Saint Paul Avenue. A few weeks later, law enforcement officers executed an unrelated search warrant at that apartment and seized a tan Glock 9 millimeter handgun with an extended clip. Wheeler's blood was discovered inside the barrel of the seized gun, and forensic analysis linked the gun to the spent casings and bullet discovered at the scene.

Upon examining the tan Glock 9 millimeter at trial, Hespen identified it as Wheeler's gun, noting a distinctive belt clip attached to the side of the gun. In addition to seeing Wheeler with the

gun at the time of the shooting, Wagner and Hespen both testified to seeing the same gun at Wheeler's apartment sometime in the weeks leading up to the shooting. Wagner also testified that Wheeler was generally known to carry a gun around that time. Based on the evidence adduced at trial, the jury found Wheeler guilty on count 3, possession of a firearm by a prohibited person.

Following a presentence investigation, the district court sentenced Wheeler to 25 to 30 years of incarceration, with credit for 339 days served. In pronouncing the sentence, the court emphasized Wheeler's "absolute denial" of responsibility and his record of criminal behavior. Wheeler appealed through new counsel.

## III. ASSIGNMENTS OF ERROR

Wheeler assigns that the district court erred in (1) entering a guilty verdict unsupported by sufficient admissible evidence, (2) not allowing defense counsel to impeach certain witnesses through extrinsic evidence, and (3) imposing an excessive sentence.

Wheeler also assigns that his trial counsel was ineffective for failing to (1) object to evidence that Wheeler was previously seen with a gun, (2) object to evidence of Wheeler's character for possession of a firearm, (3) offer cell phone records to impeach Wagner's testimony, (4) call three witnesses, and (5) properly impeach Wagner's testimony.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 311 Neb. 648, 974 N.W.2d 305 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Wheeler first challenges the sufficiency of the evidence against him on count 3. Wheeler was charged with possession of a firearm by a prohibited person, which is a Class ID felony in violation of Neb. Rev. Stat. § 28-1206(1) (Reissue 2016). In pertinent part, § 28-1206(1) provides that a person commits the offense if he or she possesses a firearm and has been previously convicted of a felony. Wheeler stipulated that he had been previously convicted of a felony, so the only question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that Wheeler possessed a firearm on or about December 6, 2020.

Wheeler argues it was inconsistent for the jury to simultaneously find him guilty of possessing a firearm and acquit him of the related assault charges. The State counters that the verdict is not necessarily inconsistent because the jury could have acquitted Wheeler on counts 1 and 2 on the grounds of self-defense. While the State briefly mentioned self-defense in closing arguments, we note that Wheeler did not raise self-defense at trial, and the jury was not instructed on self-defense. In any case, a conviction cannot be overturned solely because it is inconsistent with the jury's decision not to convict on another count. See *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019) (citing, *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932); *U.S. v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)). Rather, a sufficiency of the evidence review of one count is conducted independent of the jury's determination that the evidence was insufficient on another count. *Id.*

Thus, we examine the sufficiency of the evidence in support of Wheeler's conviction without regard to his acquittal on the other charges. Wagner testified that Wheeler was generally known to carry a gun around the time of the shooting. Wagner and Hespen both observed a tan handgun with an extended clip at Wheeler's apartment in the weeks leading up to the shooting. Wagner and Hespen both testified that Wheeler possessed the same gun on the night of the shooting. Wheeler's blood was found at the scene of the shooting, and Wagner and Hespen both identified Wheeler as the shooter. Wheeler's blood was also found inside the barrel of the gun that was used in the shooting. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient for a rational jury to conclude that Wheeler possessed a firearm on or about December 6, 2020.

### 2. IMPEACHMENT OF WITNESSES

Wheeler next assigns that the district court erred in sustaining the State's improper impeachment objections. Specifically, Wheeler argues that the court's rulings violated his constitutional right to confrontation.

#### (a) Additional Background

Prior to testifying at trial, Wagner spoke to law enforcement officers on at least two occasions. First, Wagner spoke briefly with officers over the phone while he was still recovering in the hospital. Wagner testified that he struggled to recall the specifics of that conversation, adding that his memory of that time was somewhat "fuzzy" due to the medications he was taking.

Investigator Chris Milisits confirmed that he conducted a "brief interview" with Wagner over the phone while Wagner was still in the hospital. Milisits testified that the primary objective was just to "touch base with [Wagner] to see if he could identify the person that shot him."

Wagner did not initially share any information about the shooting, and Wagner indicated to Milisits that he was concerned about his parole being revoked as a result of his involvement in the shooting. Milisits inquired as to Wagner's parole status and discovered "nothing in [Wagner's] file that was going to send him back to prison." Milisits informed Wagner of this and Wagner then identified Wheeler as the person who shot him. On January 11, 2021, Wagner provided a formal statement identifying Wheeler as the shooter and providing a more detailed account of the incident.

On cross-examination, defense counsel inquired into a number of inconsistencies in Wagner's account of events. For example, Wagner's testimony was somewhat vague as to how he knew that Wheeler would be at the house on Blue Flame Road that night. Wagner testified that he "had a pretty good idea of where [Wheeler] would be" and that the house on Blue Flame Road was "the first place on [his] list." However, Wagner could not recall whether somebody told him Wheeler was there. Wagner maintained that even when he pulled up to the house, he did not know for sure whether Wheeler would be there. However, Wagner's formal interview apparently included a statement that somebody told him Wheeler was at the house on Blue Flame Road on the night in question. While defense counsel repeatedly suggested that someone must have told Wagner that Wheeler was there, he did not attempt to refresh Wagner's memory or otherwise confront him with the prior statement itself.

Thereafter, defense counsel sought to introduce Wagner's prior inconsistent statement through the testimony of Milisits. On cross-examination, Milisits confirmed that Wagner had previously reported learning of Wheeler's whereabouts from Wheeler himself. The State immediately objected on hearsay grounds, which objection the court initially sustained. Outside the presence of the jury, defense counsel argued the statements were admissible for the limited purpose of impeaching Wagner's testimony insofar as his prior statement to Milisits was inconsistent with his testimony at trial. The court took the objection under advisement and recessed for the weekend.

When the court reconvened, the State clarified that it was objecting on the grounds of improper impeachment, in that defense counsel was "using a prior statement to impeach . . . without confronting [Wagner] with the prior statement and without giving him an opportunity to explain or deny making the prior statement." The court sustained the State's objection, concluding that defense counsel failed to adequately confront Wagner with the prior inconsistent statement such that it was improper to introduce extrinsic evidence thereof.

Anticipating the State's objection, defense counsel advised the court that he intended to pursue a similar line of questioning to highlight an inconsistency in Wagner's testimony about the gun. At trial, Wagner specifically testified that the gun he observed at Wheeler's apartment was a "nine millimeter Glock," which he described as "khaki or tan with an extended clip." On cross-examination, defense counsel inquired whether Wagner previously told law enforcement that he could not definitively identify the make and model of the gun. Defense counsel explicitly referenced Wagner's formal interview with law enforcement and disclosed the relevant contents of the prior statement alleged to be inconsistent with Wagner's testimony. Wagner generally denied defense counsel's characterization of the prior statement, but he adopted the underlying

sentiment that he could not definitively identify the make and model of the gun. With respect to his prior testimony definitively identifying the make and model of the gun, Wagner clarified, "I can honestly say I don't know for sure 100 percent what make and model it is, no. I just know that it was a tan gun that looked like a Glock 9."

Defense counsel explained to the court that he intended to ask Milisits about Wagner's prior statement in order to impeach Wagner's specific identification of the gun as a "nine millimeter Glock." As expected, the State reiterated the same objection as above, and the court sustained that objection. The court stated, "It's my understanding that the witness must deny that he made the statement and then be given an opportunity to refresh his recollection with that statement, if he can."

(b) Analysis

On appeal, Wheeler maintains that the district court's decision to sustain the State's improper impeachment objections violated his constitutional right to confrontation. See, U.S. Const. amend. VI; Neb. Const. art. 1, § 11. The State counters that this court should not even reach the merits of Wheeler's argument because (1) Wheeler failed to adequately brief the issue, and (2) Wheeler failed to raise a confrontation claim in the district court. We agree with both of the State's responses.

As the State points out, it is well-settled that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). Moreover, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Id.*

Wheeler assigned that the district court "erred by not allowing appellant's counsel to impeach certain witnesses with extrinsic evidence." Brief for appellant at 5. Accordingly, one might have expected Wheeler to argue that the court misapplied rule 613, which governs the use of extrinsic evidence to impeach a witness with a prior inconsistent statement. Neb. Rev. Stat. § 27-613 (Reissue 2016). However, Wheeler's argument makes no mention of rule 613 or the use of extrinsic evidence. Rather, Wheeler's argument focuses exclusively on the alleged violation of his constitutional right to confrontation; a claim that was neither presented to nor passed upon by the district court. For these reasons, we decline to address Wheeler's second assignment of error.

Nevertheless, because it will be necessary to resolve one of Wheeler's ineffective assistance claims, we must briefly address the merits of the alleged error that Wheeler assigned but did not argue. That is, whether the district court erred in refusing to allow defense counsel to adduce extrinsic evidence of Wagner's prior statements.

Rule 613(1) provides that a witness may be examined concerning a prior statement and "the statement need not be shown or its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel." § 27-613(1). Rule 613(2) permits the introduction of extrinsic evidence concerning prior inconsistent statements by a witness, subject to the limitation that the witness being impeached must be given an opportunity to explain or deny the prior inconsistent statement, and the opposite party must have the opportunity to interrogate the witness about the prior inconsistent statement. § 27-613(2); *State v. Owens*, 257 Neb. 832, 601

N.W.2d 231 (1999). Further, the statement sought to be impeached cannot be about a collateral or immaterial matter. *State v. Owens, supra.*

The requirement that a witness sought to be impeached by an alleged prior inconsistent statement must be afforded an opportunity to explain or deny the alleged prior inconsistent statement may be met either before or after the introduction of the extrinsic impeaching evidence. *State v. Owens*, 8 Neb. App. 109, 589 N.W.2d 867 (1999), *abrogated on other grounds, State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). "However, if counsel chooses to question the declarant concerning the inconsistent statement before introducing the extrinsic evidence of the inconsistent statement, and if the declarant admits making the inconsistent statement, counsel may not introduce extrinsic evidence of the inconsistent statement." *State v. Johnson*, 220 Neb. 392, 401, 370 N.W.2d 136, 142 (1985), *abrogated on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). "If the witness being impeached admits to the prior inconsistent statement, then he has been impeached and further extrinsic evidence is neither necessary nor generally allowed." *Id.* (citing Fenner, *Competency and Examination of Witnesses Under Article VI of the Federal Rules of Evidence and the Nebraska Evidence Rules*, 9 Creighton L. Rev. 559, 600 (1976)).

In the present case, defense counsel sought to introduce extrinsic evidence of two prior statements that Wagner made to law enforcement. Taking the two statements in reverse order, we first conclude the district court did not err in refusing to allow extrinsic evidence of Wagner's statement concerning the identification of the gun. Wagner effectively admitted to the prior statement, clarifying his trial testimony to conform to the relevant contents of his prior statement. Thus, to the extent Wagner's prior statement was inconsistent with his testimony at trial, Wagner impeached himself, and further extrinsic evidence was neither necessary nor generally allowed. See *State v. Johnson, supra.*

With respect to Wagner's statement regarding Wheeler's whereabouts on the night of the shooting, his prior statement to law enforcement was clearly inconsistent with his testimony, and it was neither collateral nor immaterial. Defense counsel failed to in any way refer to the prior statement or disclose its contents to Wagner on cross-examination. Thus, we agree with the district court that, at the time that defense counsel sought to introduce extrinsic evidence of the prior statement, Wagner had not yet been afforded an opportunity to explain or deny the same. However, extrinsic evidence of a prior inconsistent statement for the limited purpose of impeachment may be introduced either before or after the witness is given the opportunity to explain or deny. See *State v. Owens*, 8 Neb. App. 109, 589 N.W.2d 867 (1999), *abrogated on other grounds, State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). Thus, absent the court's ruling, there was nothing preventing defense counsel from introducing the statement through Milisits and then recalling Wagner to lay the foundation necessary to render the statement admissible under rule 613(2). See *State v. Owens*, 8 Neb. App. 109, 589 N.W.2d 867 (1999), *abrogated on other grounds, State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999) (witness could be recalled after introduction of extrinsic evidence to explain or deny the alleged prior inconsistent statement).

The present case is distinguishable from *State v. Al-Zubaidy*, 5 Neb. App. 327, 559 N.W.2d 774 (1997), wherein the trial court similarly precluded extrinsic evidence of a prior inconsistent statement after the declarant-witness had already testified and been excused. In *Al-Zubaidy*, the declarant-witness' testimony established that she lived out of state and would likely be unavailable

to explain or deny a prior inconsistent statement after being excused. In that case, this court concluded it was "apparent" that the witness would not have had an opportunity to explain or deny the alleged inconsistent prior statement had the impeaching witness been allowed to testify. That is not the case here. *Id*. at 339, 559 N.W.2d at 782.

There was nothing in Wagner's testimony to indicate that he was likely to become unavailable after testifying in the State's case-in-chief. To the contrary, the record demonstrates that Wagner was incarcerated in Lincoln at the time of trial. Thus, defense counsel was free to make the tactical decision to introduce extrinsic evidence of Wagner's prior statement before recalling Wagner to explain or deny that statement. Accordingly, the district court abused its discretion in refusing to allow Milisits to testify concerning Wagner's prior inconsistent statement for the limited purpose of impeachment. However, because the error was harmless beyond a reasonable doubt, we affirm the result reached by the district court.

In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *Id.* Moreover, the erroneous exclusion of extrinsic evidence which is only admissible for the limited purpose of impeachment has been found to be harmless when the credibility of the declarant-witness was otherwise attacked on cross-examination. See, *id.* at 841, 601 N.W.2d at 238 (noting that witness' credibility was "aggressively attacked" on cross-examination); *State v. Johnson*, 220 Neb. 392, 402, 370 N.W.2d 136, 143 (1985) (noting that "victim's credibility had already been attacked extensively" on cross-examination).

As discussed above, Wheeler's conviction was supported by sufficient competent evidence with or without the extrinsic evidence of Wagner's prior inconsistent statement regarding Wheeler's whereabouts on the night of the shooting. Wagner's credibility was thoroughly attacked on cross-examination. Defense counsel inquired into various inconsistencies in Wagner's account of the events, including Wagner's lack of memory as to whether or how he knew that Wheeler would be at the house on Blue Flame Road on the night in question. In closing argument, defense counsel repeatedly invoked Wagner's lack of credibility, highlighting Wagner's criminal record, drug use, and potential bias. Even the State remarked on some of the inconsistencies in Wagner's testimony, also noting Wagner's history of criminal behavior and drug use. The State encouraged the jury to weigh the credibility of the witnesses, taking account of "who they are and whether you should or shouldn't believe them." Altogether, we conclude the jury was able to adequately assess Wagner's credibility without extrinsic evidence of Wagner's prior inconsistent statement. Accordingly, any prejudice which could have resulted from Wheeler's inability to impeach that portion of Wagner's testimony was harmless beyond a reasonable doubt.

### 3. EXCESSIVE SENTENCE

Wheeler next assigns that the district court erred in imposing an excessive sentence. Wheeler was convicted of a Class ID felony, which carries a mandatory minimum sentence of 3 years of incarceration and a maximum sentence of 50 years of incarceration. § 28-1206; Neb. Rev.

Stat. § 28-105 (Reissue 2016). Wheeler was sentenced to 25 to 30 years of incarceration, which is well within the statutory limits.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Wheeler argues that the district court failed to account for various mitigating factors, such as Wheeler's age, health, and "rehabilitative needs." Brief for appellant at 21. Wheeler further argues that the district court failed to give proper weight and consideration to Wheeler's acquittal on counts 1 and 2. However, there is no indication from the record that the court ignored relevant factors or failed to account for Wheeler's partial acquittal. To the contrary, the record reflects that the district court properly reviewed and considered the presentence investigation report, including additional "character letters" submitted on Wheeler's behalf. Moreover, the court explicitly acknowledged Wheeler's acquittal on counts 1 and 2. However, the court also emphasized the seriousness of the offense in count 3, as well as Wheeler's "absolute denial" of responsibility and history of criminal behavior. Upon our review of the record, we cannot say the sentence imposed by the district court was an abuse of discretion.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Wheeler raises, through new counsel, five claims of ineffective assistance of trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blake, supra.* Otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *Id.* The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims; an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

Accordingly, we examine Wheeler's claims and determine first whether the claim was raised with the requisite particularity. For those claims that were properly raised, we then determine whether the record is sufficient to address the merits of the claim, reserving the resolution of any claim that will require an evidentiary hearing. To prevail on the merits of a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v.*

*Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

(a) Failure to Object to Testimony

Wheeler's first two ineffective assistance claims allege that trial counsel was ineffective for failing to object to testimony which Wheeler contends was inadmissible evidence of prior bad acts under rule 404. Neb. Rev. Stat. § 27-404 (Reissue 2016). First, Wheeler challenges trial counsel's failure to object to the testimony of both Wagner and Hespen that the gun used in the shooting was previously seen in Wheeler's apartment. Second, Wheeler challenges trial counsel's failure to object to Wagner's testimony that Wheeler was generally known to carry a gun. With respect to both claims, the State counters that the testimony was direct evidence of a crime charged and thus outside the scope of rule 404. We conclude that Wheeler has preserved his first and second claims for review, but a determination as to the sufficiency of the record to resolve those claims requires a discussion of rule 404 and the admissibility of prior bad acts evidence.

Rule 404 provides, in part:

(2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(3) When such evidence is admissible pursuant to this section, in criminal cases evidence of other crimes, wrongs, or acts of the accused may be offered in evidence by the prosecution if the prosecution proves to the court by clear and convincing evidence that the accused committed the crime, wrong, or act. Such proof shall first be made outside the presence of any jury.

§ 27-404. Rule 404(2), however, does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015). Other acts under rule 404(2) are acts that are not part of the events giving rise to the present charges. *State v. Salvador Rodriguez*, 296 Neb. 950, 898 N.W.2d 333 (2017). The Nebraska Supreme Court has characterized evidence that is inextricably intertwined with a charged crime to be evidence which forms a factual setting and is necessary to present a coherent picture of the crime. See *State v. Cullen, supra*.

Wheeler was charged with first degree assault, use of a firearm to commit that assault, and possession of a firearm by a prohibited person. If the challenged evidence bears directly on an element of the crimes charged, then the evidence was outside the scope of rule 404 and trial counsel could not have been ineffective for failing to object on those grounds. If, on the other hand, the challenged evidence pertains to an entirely separate incident of uncharged criminal conduct, then a proper objection would have triggered rule 404(2) and, if the State identified a permissible use, prompted a rule 404(3) hearing outside the presence of the jury.

Wheeler challenges the testimony of Wagner and Hespen in two respects under rule 404. First, both Wagner and Hespen testified that they had previously observed the gun used in the shooting on a table in Wheeler's apartment. The record was not clear as to when this occurred,

however, Wagner testified that he met Wheeler "right close to Thanksgiving" when Wagner and Hespen helped Wheeler move furniture out of his apartment. Thus, the earliest that Wagner could have observed the gun was sometime in late November 2020, roughly 2 weeks prior to the shooting. Second, Wheeler challenges Wagner's testimony that Wheeler was "known to carry the gun" and that "everybody knows [Wheeler] carries a gun." In both respects, we conclude the challenged testimony was direct evidence of the charge in count 3 that Wheeler was a prohibited person in possession of a firearm on or about December 6, 2020.

We begin by acknowledging the authority to the contrary. In *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012), the Supreme Court addressed a similar rule 404 challenge to testimony that the defendant was seen with a gun "several days or a week" prior to the date of a shooting for which the defendant was charged with second degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. *Id*. at 192, 817 N.W.2d at 290-91. The court held that the evidence of prior possession was inadmissible under rule 404. The court reasoned that the State only charged the defendant in relation to the shooting, and thus, evidence that the defendant possessed the same gun around a week prior to that date was evidence of an entirely "separate incident" and thus subject to rule 404. *State v. Freemont*, 284 Neb. 191, 817 N.W.2d at 290.

At first glance, *Freemont* appears to be dispositive in the present case. Wheeler raises a rule 404 challenge to evidence that he possessed the gun used in the shooting roughly 2 weeks prior, and, under *Freemont*, such possession would likely constitute an entirely separate incident subject to rule 404. However, Justice Cassel authored a concurring opinion in *Freemont* to discuss the doctrine of continuing possession, which was not addressed by the majority in that case. See *State v. Freemont, supra.* (Cassel, J., concurring). Justice Cassel reasoned as follows:

> Because the State charged Freemont with possession of a deadly weapon by a prohibited person, it had the burden to prove, as relevant to the facts of this case, that Freemont possessed a firearm and that he had previously been convicted of a felony. . . .
>
> Evidence of Freemont's earlier possession is intrinsic to and directly bears on an element of the charged crime of being a felon in possession of a deadly weapon. . . .

*Id.* at 208, 817 N.W.2d at 301. Justice Cassel emphasized that the information charged the defendant with possession "on or about" a specific date, concluding that evidence of possession about a week prior to that date "is not so removed in time as to lose its temporal connection to the charged date of possession." *Id.* at 212-13, 817 N.W.2d at 303-04. Justice Cassel also noted that the defendant's prior possession of a firearm occurred "much closer in time to the charged crimes than did similar evidence admitted by the federal courts." *Id.* at 212, 817 N.W.2d at 303 (citing, *U.S. v. Adams*, 604 F.3d 596 (8th Cir. 2010) (evidence that defendant possessed firearm on four occasions within 1 year prior to charged crimes was not subject to rule 404); *U.S. v. Dorsey*, 677 F.3d 944 (9th Cir. 2012) (evidence that defendant possessed firearm between 3 and 4 months prior to charged crimes was not subject to rule 404).

A few years after *Freemont*, the Supreme Court expressly limited the holding in *Freemont*, referring favorably to Justice Cassel's concurring opinion and federal case law applying the continuing possession doctrine. See *State v. Salvador Rodriguez*, 296 Neb. 950, 898 N.W.2d 333 (2017). See, also, *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015); *U.S. v. Towne*, 870 F.2d

- 11 -

880 (2d Cir. 1989). Under the doctrine of continuing possession, the crime of possession may extend over a period of time if uninterrupted. *State v. Salvador Rodriguez, supra.* Absent language indicating differently, "possession" within a criminal statute contemplates a continuing offense as opposed to a single incident. *Id.* There is nothing in the language of § 28-1206 to indicate that the Legislature intended possession of a firearm by a prohibited person to be a single incident rather than a continuing offense.

In *U.S. v. Towne, supra*, the defendant was charged with unlawful possession of a firearm on a specified date, and the State sought to present evidence that the defendant was in possession of the same gun on days prior to that date. The defendant challenged that evidence under the federal equivalent of rule 404. The U.S. Court of Appeals for the Second Circuit held that the evidence was not "other crimes" evidence because "[t]he continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense." *U.S. v. Towne*, 870 F.2d at 886. The court reasoned that the evidence was not admitted for impermissible propensity purposes, but, rather, "to show that it was [the defendant] and not someone else who exercised continuous dominion and control over the pistol." *Id.*

Likewise, in the present case, we conclude that the challenged testimony constitutes direct evidence of a crime charged and was thus outside the scope of rule 404. Wheeler, a person prohibited from possessing a firearm, was charged with possessing a firearm on or about December 6, 2020. Wagner and Hespen both testified that they witnessed Wheeler in possession of a gun on that day. Wagner and Hespen further testified that they saw the same gun in Wheeler's apartment in the weeks leading up to December 6, and Wagner testified that Wheeler was generally known to carry a gun around that time. Under the continuing possession doctrine, this testimony was not impermissible propensity evidence, but, rather, constituted circumstantial evidence that Wheeler was in possession of a firearm on or about December 6.

The pertinent inference supported by the testimony is not that Wheeler possessed a gun on an unrelated previous occasion, and thus, had a propensity to possess a gun on or about December 6, 2020. Rather, the inference is that Wheeler possessed the gun used in the shooting in the weeks leading up to December 6, which bears directly on the likelihood that Wheeler continued to possess the same gun on or about that day. See *State v. Freemont*, 284 Neb. 179, 212, 817 N.W.2d 277, 303 (2012) (Cassel, J., concurring) ("the evidence speaks not to [the defendant's] character, but, rather, to the likelihood of his possession of a firearm at the time of the charged crimes"). Accordingly, trial counsel could not have been ineffective for failing to object to this evidence on rule 404 grounds, and Wheeler's first and second ineffective assistance claims are refuted by the record.

### (b) Failure to Introduce Phone Records

Wheeler's third claim of ineffective assistance alleges that trial counsel was ineffective for failing to introduce Wheeler's cell phone records to impeach Wagner's testimony. Specifically, Wheeler argues that the cell phone records would have contradicted Wagner's testimony that he and Wheeler were texting back and forth on the day of the shooting. The State counters that trial counsel disclosed the substance of those records on cross-examination, such that there was little to gain by offering the records into evidence. We agree, and we thus conclude that Wheeler's claim is refuted by the record.

Wheeler asserts the phone records would have showed only a single text message between Wheeler and Wagner during the day of the shooting. Wheeler maintains trial counsel was ineffective for failing to introduce that evidence to contradict Wagner's testimony that he and Wheeler "had been texting back and forth all day." While trial counsel did not offer the phone records into evidence, trial counsel specifically cross-examined Wagner regarding that contradictory evidence, disclosing that portion of the phone records which Wheeler argues was relevant to impeaching Wagner's testimony. Thus, Wheeler cannot show prejudice and the record refutes Wheeler's claim that counsel was ineffective for failing to introduce Wheeler's cell phone records.

### (c) Failure to Call Witnesses

Wheeler's fourth claim of ineffective assistance alleges that trial counsel was ineffective for failing to call Desiree Allen, Michael Carmen, and Jinny Greer to testify at trial. Each of these individuals was reportedly present at the residence on Blue Flame Road on the night of the shooting. We conclude that Wheeler has preserved his fourth claim of ineffective assistance, but the record is insufficient to resolve the claim on direct appeal.

When alleging ineffective assistance for the failure of counsel to call witnesses, appellate counsel must give on direct appeal the names or descriptions of the uncalled witnesses forming the basis of the claim. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). But see, *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018); *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

We recently discussed an apparent inconsistency between *Blake* and the earlier cases of *Hill* and *Ash* with regard to the level of specificity required on direct appeal to challenge trial counsel's failure to call witnesses. See *State v. Roebuck*, 31 Neb. App. 67, 976 N.W.2d 218 (2022). As we did in *Roebuck*, we apply the rule clearly articulated in *Blake*; *Hill*, and *Ash* notwithstanding. Accordingly, we conclude that Wheeler has preserved his claim of ineffective assistance for failing to call the three named witnesses above. However, the record is insufficient to resolve the claim on direct appeal, as the nature of the omitted testimony is not found in the appellate record.

### (d) Failure to Properly Impeach Wagner's Testimony

Finally, Wheeler claims that trial counsel was ineffective for failing to properly impeach Wagner's testimony with his prior statements discussed in section 2 above. Essentially, Wheeler raises this claim as an alternative to his second assignment of error regarding trial counsel's attempt to impeach Wagner's testimony through extrinsic evidence of prior inconsistent statements. Wheeler maintains that if the district court was correct to sustain the State's improper impeachment objections, then the improper impeachment itself amounted to ineffective assistance of counsel. We conclude that Wheeler's claim is refuted by the record.

With respect to Wagner's statement that he could not definitively identify the make and model of the gun, Wagner effectively admitted to that statement, revising his trial testimony to clarify that he could not definitively identify the make and model of the gun. Because Wagner admitted to the prior statement, he was impeached and extrinsic evidence of the prior statement

was neither necessary nor generally allowable. See *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985), *abrogated on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). Accordingly, trial counsel could not have been ineffective for failing to adduce extrinsic evidence of Wagner's prior statement regarding the make and model of the gun.

With respect to Wagner's statement regarding Wheeler's whereabouts on the night of the shooting, as discussed above, trial counsel's decision to introduce extrinsic evidence of the statement prior to giving Wagner the opportunity to explain or deny was a reasonable strategic decision. See *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021) (strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable). The district court's erroneous ruling precluded trial counsel from further attempts to properly impeach Wagner's testimony through extrinsic evidence of the prior statement, and trial counsel could not have been ineffective for failing to do something which the court refused to allow. Accordingly, Wheeler's fifth and final ineffective assistance claim is refuted by the record.

## VI. CONCLUSION

For the foregoing reasons, we affirm Wheeler's conviction and sentence in all respects. We further conclude that Wheeler's first, second, third, and fifth claims of ineffective assistance of counsel are refuted by the record. With respect to Wheeler's fourth ineffective assistance claim, we conclude the claim is refuted by the record insofar as it relates to Allen and Carmen, and, with respect to Greer, Wheeler has preserved the claim but the record is insufficient to resolve it on direct appeal.

AFFIRMED.