STATE OF NEBRASKA, APPELLEE, V. PHILLIP A. ALLISON, APPELLANT.

469 N.W.2d 360

Filed May 17, 1991.   No. 90-340.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Phillip A. Allison, was charged with one count of first degree assault, two counts of second degree assault, and three counts of use of a firearm to commit a felony. The first degree assault involved the shooting of Eric Meeks. The second degree assault counts involved the shooting of Michael Suggs and Kelly R. Hollingsworth.

A jury convicted the defendant of both counts of second degree assault and two counts of use of a firearm to commit a felony. The defendant was found not guilty of first degree assault and the third count of use of a firearm to commit a felony. On appeal, the defendant claims that the evidence was insufficient to sustain his convictions, that the trial court erred by sustaining the State's motion in limine, and that the sentences imposed are excessive.

In the late hours of Sunday, June 25, 1989, a large gathering of youths took place at the 7 Eleven store at 42nd Street and Ames Avenue in Omaha, Nebraska. The defendant was present at this location with his sister, two of his cousins, and his sister's boyfriend. There was another group of youths consisting of Suggs, his sister and brother, Hollingsworth, Meeks, Brian Keith Anderson, and Keith Ward. The young men in the latter group belong to an organization known as the Vice Lords.

The defendant did not know any of the members of the Suggs group, and the members of the Suggs group did not know the defendant prior to the night in question.

The defendant had recently moved to Omaha from Atlanta and, prior to the evening in question, had a run-in with members of the "Bloods" gang. At that time they had damaged his car and threatened his life. Because of those threats, the defendant carried a loaded handgun, which he had in his

possession on the night of June 25, 1989.

While the members of each group were visiting with each other, the defendant's cousin Tyresa Ritchie went over to the Suggs group because she wanted to learn the Vice Lords handshake. When she returned, the young men in the Suggs group started "throwing up" Vice Lords signs and saying Vice Lords sayings indicating that the area was Vice Lords territory. Tyresa told the defendant this behavior was directed at him.

The defendant testified that Suggs threatened him and said that if he wanted to get the "gat," he could get the gat, meaning he could get the gun. Then, Ward pulled out a gun, after which the defendant pulled out his gun, asking "what's up." At that point, Meeks lunged at the defendant, and the defendant shot him.

After he had shot Meeks, the defendant ran toward Hollingsworth's car. He shot into the car because he thought he saw Suggs reaching under the seat for something and assumed it was a gun. Both Suggs and Hollingsworth were hit by the defendant's gunshots.

The defendant claims that the trial court erred in sustaining the State's motion in limine, which prohibited the defendant from introducing evidence of turbulent or aggressive behavior by the victims that occurred 4 months after the shooting. The defendant asserts the evidence was admissible in order to corroborate the defendant's reasonable belief that deadly force was necessary on the night in question to protect himself against death or serious bodily harm. He argues the evidence was relevant to justify the type of force the defendant believed was necessary for the purpose of protecting himself the night of the shooting.

Neb. Rev. Stat. § 28-1409 (Reissue 1989) describes the use of force permissible in order to protect oneself. As it relates to this case, § 28-1409(4) provides that the use of deadly force is justifiable when the actor believes that such force is necessary to protect himself against death or serious bodily harm; however, deadly force is not justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . ." Deadly force is defined as

force which the actor uses with the purpose of causing or

which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force. Neb. Rev. Stat. § 28-1406(3) (Reissue 1989). A person using force to protect himself may estimate the necessity of such use of force *"under the circumstances as he believes them to be when the force is used."* (Emphasis supplied.) § 28-1409(5).

Relevant evidence is evidence which has any tendency to make the existence of any fact that is significant to the outcome of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989). "Neb. Evid. R. 402 permits the admission of relevant evidence only. . . . To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided." *State v. Lonnecker*, 237 Neb. 207, 210, 465 N.W.2d 737, 740-41 (1991).

In this case, the issue was whether under the circumstances as the defendant believed them to be at the time of the shooting the defendant was justified in employing deadly force to protect himself. Evidence of the victims' violent or aggressive behavior which occurred 4 months after the defendant shot the victims was not relevant to the circumstances as the defendant believed them to be the night he shot the victims. Accordingly, the trial court did not err in sustaining the State's motion in limine.

Citing to the statutes discussed above regarding justification for use of force and to NJI 14.33, the defendant contends that the evidence was insufficient to support the jury's verdicts because the evidence is clear that the defendant was justified in the force he used. This argument is without merit.

At the time that the defendant shot the victims, he did not know them. The circumstances as the defendant believed them to be at the time of the shooting show that the Suggs group was making gang signals and threats directed at the defendant and that Suggs said something about getting a gun. This made the defendant nervous; however, he did not leave the scene. After the defendant saw Ward pull out a pistol, he drew his own gun, asking "what's up," at which time Meeks lunged at the

defendant, and the defendant shot him.

After the defendant shot Meeks, the defendant ran toward Hollingsworth's car. He shot into the car because he thought he saw Suggs reaching under the seat for something and assumed it was a gun.

As to whether the defendant was justified in using deadly force by shooting into the car, the evidence is that the defendant was not surrounded by members of the Suggs group, and there was nothing to prevent him from retreating or entering the store. No witness saw Suggs with a gun, and no one saw guns coming from the car, including the defendant.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, the Supreme Court does not resolve conflicts in the evidence, determine the plausibility of explanations, or weigh the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them.

(Syllabus of the court.) *State v. Cogswell*, 237 Neb. 769, 467 N.W.2d 680 (1991).

On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*Id.*

The evidence in this case, when examined in the light most favorable to the State, shows that the defendant could have avoided shooting into the car by retreating from the scene. He was not justified in that use of deadly force, and his argument to the contrary is without merit.

The defendant also argues that the evidence was insufficient for a conviction of second degree assault against Suggs because Suggs' testimony regarding his injury was so lacking in probative force that it cannot be said as a matter of law that the evidence supports a finding a guilt beyond a reasonable doubt.

The elements of second degree assault as applied to this case

are bodily injury to another person caused knowingly, intentionally, or recklessly by the defendant's use of a dangerous instrument. See Neb. Rev. Stat. § 28-309 (Reissue 1989). Suggs testified that he was shot and injured and that he had a scar from the wound. The defendant admitted that he shot into the car.

The defendant is asking this court to pass on the credibility of the witnesses. This is not the province of the Supreme Court, but, rather, the province of the fact finder. See *State v. Johns*, 233 Neb. 477, 445 N.W.2d 914 (1989). The evidence supports the jury's conviction of the defendant for second degree assault against Suggs.

Finally, the defendant argues that the sentences imposed are excessive. The trial court sentenced the defendant to terms of 20 months' to 4 years' imprisonment, to be served concurrently, for the assault convictions and to concurrent terms of 2 to 4 years on the use of a firearm convictions. The sentences for the use of a firearm convictions run consecutively to the sentences for the assault convictions.

Second degree assault is a violation of § 28-309 and is a Class IV felony. It is punishable by imprisonment for up to 5 years, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985).

Use of a firearm in the commission of a felony is a Class III felony distinct from any accompanying felony, and a sentence for it must be consecutive to the sentence for any accompanying felony. Neb. Rev. Stat. § 28-1205(2) and (3) (Reissue 1989). A Class III felony is punishable by imprisonment for a minimum of 1 year and a maximum of 20 years, a $25,000 fine, or both. § 28-105.

As we have stated many times, "a sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court." *State v. Cogswell, supra* at 772, 467 N.W.2d at 682. The crimes involved in this case were violent and senseless. The sentences imposed were within the statutory limits and were not an abuse of discretion.

The judgment is affirmed.

AFFIRMED.