STATE OF NEBRASKA, APPELLEE, V.
DAMIAN J. MARSHALL, APPELLANT.

573 N.W. 2d 406

Filed January 2, 1998.   No. S-96-1100.

James Walter Crampton for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WHITE, C.J.

Damian J. Marshall was charged with second degree murder, attempted second degree murder, and two counts of using a

firearm to commit a felony. He was tried before a jury on June 25, 1996. After the presentation of all evidence in the trial, the district court overruled Marshall's request for a jury instruction on self-defense as to the second degree murder charge. On July 1, 1996, Marshall was convicted on all charges. On October 15, he was sentenced to life in prison on the second degree murder conviction, and he received consecutive sentences for the other charges totaling 14 to 18 years. Marshall now appeals.

On May 13, 1995, at approximately 11:30 a.m., Tchalla Renfrow backed the vehicle he was driving into the driveway at 6315 North 51st Avenue in Omaha, Nebraska. Ricky Booth was a passenger in the vehicle. Renfrow intended to retrieve a necklace from Tanya Straughn, Renfrow's former girl friend, who lived at the address. Renfrow testified that neither he nor Booth had any weapons at that time.

Renfrow got out of the car, went to the house, and knocked on the door. A child answered, and Renfrow asked to see Straughn. Straughn came out, and Renfrow told her he wanted the necklace. Straughn went back into the house and returned moments later with the necklace. She gave the necklace to Renfrow, and Renfrow got back into the car.

Once inside the car, Booth, sitting in the passenger seat, asked to see the necklace. Renfrow handed Booth the necklace, and then Renfrow grabbed his door to pull it shut. Before closing the driver's-side door, Renfrow noticed Marshall standing on a small hill outside the house.

Marshall, who also lived at 6315 North 51st Avenue, said to Renfrow, "Blood, you've got the nerve to come over to my house." Marshall testified that both Renfrow and Booth then reached under the seat of the car. Renfrow put his foot on the ground, presumably to get out of the car. Marshall testified that he saw a gun in Renfrow's hand at that point. Marshall then pulled a .32-caliber revolver out of his pocket and began shooting at the car. Marshall fired five or six shots. Booth and Renfrow fled the vehicle after the shooting, and Marshall ran around to the back of the house and headed toward his aunt's house.

Lawanda Littlejohn, who lived across the street from Marshall, witnessed the shooting from her window. She

observed that the two individuals who fled the vehicle had no guns in their hands. Straughn was still in the driveway behind the vehicle at the time of the shooting. She testified that she saw Booth stumble or fall out of the car after the shots were fired and that he had a gun in his right hand. Renfrow testified that he did not have anything in his hands when Marshall began shooting.

Renfrow was struck by Marshall's gunshot and required surgery for his wounds. Booth died of a gunshot wound to the chest.

Marshall was charged with second degree murder in the death of Booth, attempted second degree murder in the shooting of Renfrow, and two counts of use of a firearm to commit a felony.

Following a jury trial, Marshall was convicted of all four counts on July 1, 1996. On October 15, he was sentenced to life in prison for the second degree murder conviction, 8 to 10 years' imprisonment for attempted second degree murder, and 3 to 4 years' imprisonment on each of the two use of a weapon convictions, with all sentences to run consecutively.

Two mistrials were declared before Marshall was convicted. After each mistrial, Marshall filed a plea in bar motion. He claimed that in each case the district court inappropriately excused certain jurors and declared a mistrial after the jury was seated and sworn. Marshall argued that the court should have chosen an alternate juror instead of granting a mistrial. Marshall claimed that the improper grant of a mistrial violated his constitutional protection against double jeopardy.

The district court summarily overruled both motions on June 25, 1996. The district court also denied Marshall's request for a self-defense instruction as to the charge involving Booth.

Marshall asserts 10 assignments of error, which can be summarized as follows: (1) The district court erred in granting two mistrials, as the court abused its discretion in excusing jurors after they were sworn and seated when alternates were available; (2) the district court erred in refusing to give the jury a self-defense instruction on the second degree murder charge; (3) the district court erred in refusing to allow evidence of alleged gang affiliation of the victims; and (4) Marshall was denied his right to effective assistance of counsel.

A trial court is required to give a self-defense instruction where there is any evidence in support of a legally cognizable theory of self-defense. *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997). To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. In addition, the force used in defense must be immediately necessary and must be justified under the circumstances. *Kinser, supra*; *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996).

Neb. Rev. Stat. § 28-1409 (Reissue 1995) provides in pertinent part:

(1) . . . [T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

. . . .

(4) The use of deadly force shall not be justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily harm . . . nor is it justifiable if:

(a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

Neb. Rev. Stat. § 28-1406(3) (Reissue 1995) defines "deadly force" as

force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable

probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997); *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). The two prongs of the test stated in *Strickland, supra*, may be addressed in either order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Strickland, supra; Boppre, supra.*

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Gibbs, ante* p. 241, 570 N.W.2d 326 (1997); *State v. Hall*, 252 Neb. 885, 566 N.W.2d 121 (1997).

Under Neb. Rev. Stat. § 25-1931 (Reissue 1995), proceedings for reversing, vacating, or modifying judgments or final orders shall be commenced within 30 days after the making of the final order complained of. To vest an appellate court with jurisdiction, the notice of appeal must be filed within 30 days of the entry of the final order. *State v. Jacques, ante* p. 247, 570 N.W.2d 331 (1997); *State v. Trevino*, 251 Neb. 344, 556 N.W.2d 638 (1996). A ruling on a plea in bar is a final order as defined in Neb. Rev. Stat. § 25-1902 (Reissue 1995). *State v. Trevino, supra; State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995).

An issue presented regarding a denial of a plea in bar is a question of law. *Trevino, supra; Sinsel, supra.* Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Williams, ante* p. 111, 568 N.W.2d 246 (1997); *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997).

Because a plea in bar is a final order, Marshall had 30 days from its denial to file his notice of appeal. See Neb. Rev. Stat. § 25-1912(1) (Reissue 1995). Timeliness of an appeal is a jurisdictional necessity. *Sinsel, supra; State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994). When the Legislature fixes the time for taking an appeal, the courts have no power to extend the time directly or indirectly. An appellate court may not consider a case as within its jurisdiction unless its authority to act

is invoked in the manner prescribed by law. *Sinsel, supra*; *State v. Kelly*, 200 Neb. 276, 263 N.W.2d 457 (1978).

Consequently, this court does not have jurisdiction to review the district court's order overruling Marshall's plea in bar motions, as Marshall failed to timely appeal said ruling.

Marshall's second assignment of error is that the trial court refused to give the jury an instruction on self-defense as to the second degree murder charge in the death of Booth. The State counters that Marshall was not justified in the use of force because he voluntarily placed himself in a position of danger by leaving his house and confronting Renfrow and Booth. The State contends that Marshall knew that such a confrontation would likely result in violence. Instead, the State argues, Marshall could have remained safely in his house.

Marshall testified in his own defense as follows:

Q. Did you know [Renfrow] was the person out there in your driveway?

A. When I looked out the window.

Q. So you knew he was there?

A. Yes. . . .

Q. . . . Is there any question in your mind that [Renfrow and Booth] came to do you harm?

A. Yeah, they did.

When asked why he thought Renfrow would pull a gun on him, Marshall responded, "[Renfrow] was mad. He — you know, you see, we already said something to each other. You know, and he already spoke to my poeple [sic] and said he going to deal with me. So I already knew we was going to end up fighting."

Marshall's own testimony indicates that he knew Renfrow was outside his house before the two confronted each other. Marshall's testimony also shows that he was aware that such a confrontation with Renfrow and Booth would likely result in violence. We agree with the State's argument that Marshall voluntarily put himself in a position of danger by going outside to confront the two men. There is no evidence that anything was preventing Marshall from remaining safely in his home, thereby avoiding any necessity on his part to use force.

The facts here are very similar to those in *State v. Allison*, 238 Neb. 142, 469 N.W.2d 360 (1991), where the defendant fired shots into a car because he thought he saw the victim reaching under the seat for something and assumed it was a gun. We stated:

As to whether the defendant was justified in using deadly force by shooting into the car, the evidence is that the defendant was not surrounded by members of the [victim's] group, and there was nothing to prevent him from retreating . . . . No witness saw [the victim] with a gun, and no one saw guns coming from the car, including the defendant.

. . . .

The evidence in this case, when examined in the light most favorable to the State, shows that the defendant could have avoided shooting into the car by retreating from the scene. He was not justified in that use of deadly force, and his argument to the contrary is without merit.

*Id.* at 146, 469 N.W.2d at 363.

Since we find no evidence in support of a legally cognizable theory of self-defense as to Booth, we hold the trial court did not err in refusing Marshall's request for an instruction on self-defense regarding the charge of second degree murder in the killing of Booth.

Marshall next claims that the trial court erred in refusing Marshall's counsel the opportunity to explore gang-related evidence and testimony in this case to demonstrate Marshall's state of mind and reasonable fears, in support of his self-defense argument. Marshall urges that such testimony would be "extremely probative and relevant to Mr. Marshall's reasonable fear of immediate harm from both Mr. Renfrow and his companion, Mr. Booth." Brief for appellant at 54.

Marshall's counsel's attempts to elicit testimony regarding possible gang affiliations of Renfrow and Booth were met with sustained objections. The trial court indicated that the victims' being gang members was not necessarily relevant in and of itself. We agree.

Marshall's final argument is that he was denied effective assistance of counsel at trial. Specifically, Marshall alleges his

trial counsel was ineffective because he (1) failed to adequately prepare for trial and failed to interview key witnesses prior to trial, (2) failed to clearly object on the record to the trial court's decision to grant the second mistrial, (3) failed to fully develop Marshall's fear of the victims, and (4) undermined Marshall's self-defense argument by suggesting in closing argument that Booth was killed as the result of an accident.

Marshall argues that his trial counsel failed to locate and interview Tracy Harris, a witness to the incident. This argument is without merit, as the fact that Harris actually testified in this case is plainly evident from the record. Harris was called by Marshall's counsel after he had rested. Marshall states that his "[trial counsel] failed in his duty to his client to find [Harris], interview her, and prepare her for cross-examination." Brief for appellant at 61. However, Marshall says nothing as to how the proceedings would have been different had his trial counsel interviewed Harris before she testified. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Marshall also claims his trial counsel was ineffective in failing to fully develop Marshall's fear of the victims. As we stated previously, the effect of Marshall's fear of the victims would be of little probative value in support of his self-defense argument, since Marshall chose to place himself in a position of danger by confronting the two men. This argument is without merit.

Marshall claims that his trial counsel's failure to object to the second mistrial also rendered his counsel's assistance ineffective. Once again, Marshall fails to demonstrate a reasonable probability as to how the proceeding would have been different had counsel objected. See *id.* This argument also is without merit.

Marshall finally contends that his trial counsel was ineffective in not arguing to the jury a self-defense theory as to Booth in his closing argument. Marshall's trial counsel instead argued to the jury that Booth's killing was accidental. Marshall now contends: "[Trial counsel] completely removes any credibility whatsoever for [Marshall's] argument that Mr. Booth was killed in self-defense by suggesting to the jury that Mr. Booth was accidentally killed." Brief for appellant at 67.

As we held earlier, the trial court properly refused a jury instruction on self-defense as to the charge involving Booth. As the jury was not allowed to consider self-defense in the killing of Booth, Marshall's trial counsel could not properly argue such a defense to the jury. As such, this argument also is without merit.

For the foregoing reasons, we conclude that Marshall has failed to show that he received ineffective assistance of counsel during his trial.

For the above-stated reasons, the judgment of the district court is affirmed.

AFFIRMED.