Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/20/2026 08:07 AM CST

State of Nebraska, appellee, v.
Kim K. Liech, appellant.
___ N.W.3d ___

Filed February 20, 2026.    No. S-25-094.

1. **Jury Instructions.** Whether jury instructions given by a trial court are
correct is a question of law.
2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal
conviction for sufficiency of the evidence, whether the evidence is
direct, circumstantial, or a combination thereof, the standard is the same:
An appellate court does not resolve conflicts in the evidence, pass on
the credibility of witnesses, or reweigh the evidence; such matters are
for the finder of fact. The relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.
3. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
tence imposed within the statutory limits absent an abuse of discretion
by the trial court.
4. ____: ____. An abuse of discretion takes place when the sentencing
court's reasons or rulings are clearly untenable and unfairly deprive a
litigant of a substantial right and a just result.
5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible
error from a court's refusal to give a requested instruction, an appel-
lant has the burden to show that (1) the tendered instruction is a correct
statement of the law, (2) the tendered instruction is warranted by the
evidence, and (3) the appellant was prejudiced by the court's refusal to
give the tendered instruction.
6. **Self-Defense.** In Nebraska, self-defense is a statutorily defined affirma-
tive defense.
7. ____. It is only unlawful force directed at a defendant which provides a
justifiable basis for self-defense.

8. **Trial: Evidence: Proof.** The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense. When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove.

9. **Self-Defense: Jury Instructions: Evidence.** If the trial evidence does not support a claim of self-defense, the jury should not be instructed on it.

10. **Self-Defense.** To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances.

11. **Self-Defense: Jury Instructions: Evidence.** A trial court must instruct the jury on self-defense when there is any evidence adduced which raises a legally cognizable claim of self-defense.

12. **Self-Defense: Jury Instructions.** Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense.

13. **Self-Defense: Jury Instructions: Evidence.** It is only when the evidence does not support a legally cognizable claim of self-defense, or when the evidence is so lacking in probative value that it constitutes a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense.

14. **Self-Defense: Evidence.** To determine whether the evidence supports a legally cognizable claim of self-defense under Nebraska law, a trial court assesses the evidence without deciding factual issues.

15. **Self-Defense: Jury Instructions.** A defendant who is the initial aggressor is not entitled to a self-defense instruction.

16. **Self-Defense.** If a defendant has unjustifiably placed himself or herself in harm's way, a court may properly find that such facts do not support a lawful claim of self-defense.

17. **Criminal Law: Evidence: Appeal and Error.** When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

18. **Criminal Law: Intent: Circumstantial Evidence.** When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.

19. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court

must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.

20. ____: ____. When determining whether a sentencing court abused its discretion, it is not the proper function of an appellate court to conduct a de novo review or engage in a reweighing of the sentencing factors in the record.

Appeal from the District Court for Lancaster County: Matthew O. Mellor, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Matthew F. Meyerle for appellant.

Michael T. Hilgers, Attorney General, Teryn Blessin and Danielle Jewell, Senior Certified Law Student, for appellee.

Funke, C.J., Cassel, Stacy, and Papik, JJ., and Heavican, Retired C.J., and Martinez, District Judge.

Stacy, J.

In this appeal, an inmate challenges his felony conviction for assaulting a correctional officer. He contends that the trial court erred in refusing his proposed jury instruction on self-defense, that the evidence was insufficient to support his conviction, and that he received an excessive sentence. We find no merit to his assigned errors and therefore affirm the conviction and sentence.

## I. BACKGROUND

At all relevant times, Kim K. Liech was serving a prison sentence in the custody of the Nebraska Department of Correctional Services. He was housed in unit "A" at the Reception and Treatment Center in Lancaster County.

On December 20, 2022, Cpl. Johnie Cantrell was a correctional officer assigned to unit "A," and Officer Daniel Lane was a trainee shadowing Cantrell. It is undisputed that while Cantrell and Lane were working in the "pantry office"

of unit "A," Liech entered the office and struck Cantrell twice in the head.

Liech was charged with assault by a confined person, in violation of Neb. Rev. Stat. § 28-932 (Reissue 2016). He pled not guilty, and a 2-day jury trial was conducted in the district court for Lancaster County.

## 1. Jury Trial

At trial, the State called both Cantrell and Lane to testify, and it offered video footage from prison security cameras. The defense called Liech and another inmate, Michael Brown, to testify. We summarize this evidence only as necessary to address the issues raised on appeal.

### (a) Security Camera Footage

Video cameras mounted in the hallway of unit "A" recorded the events of December 20, 2022, from a vantage point outside the pantry office door. The footage did not capture audio, and the inside of the office area is largely outside camera range.

In the video footage, Liech is carrying a laundry bag as he approaches the open office door. Liech stands in the office doorway with his feet straddling a red line on the floor near the doorway, and he appears to be arguing with someone inside the office. This behavior continues for approximately 90 seconds; then, Liech drops the bag, assumes a fighting stance, and lunges inside the office where he is outside the security cameras' range. A few seconds later, Liech runs out of the office and down the hallway.

### (b) Evidence of Prison Policies

No written prison policies, rules, regulations, or guidelines were offered into evidence. However, Lane testified that prison policy prohibited inmates from crossing the red line on the floor outside the pantry office without the permission of a correctional officer. And Brown testified that if a correctional officer directs an inmate to "leave the pantry office," the inmate is required to obey that direction.

There was also testimony about prison policies governing the deployment of what the parties refer to as "OC spray," a substance carried by correctional officers on their service belts that, for simplicity, we will refer to as "pepper spray." Cantrell testified that prison policy required officers to give two warnings before deploying pepper spray and that if an inmate refuses to comply after these warnings, then pepper spray is to be deployed in short bursts. On cross-examination, Cantrell admitted that prison guidelines did not generally authorize staff to "use force against inmates who are verbally noncompliant." But Lane testified that under prison policy, it was "permissible to respond with [pepper spray] to verbal threats," adding that if a correctional officer believed a situation was escalating toward the use of physical force, then the officer was "encouraged to spray before it gets physical."

(c) Cantrell's Testimony

Cantrell testified that his memory of the assault was limited due to the injuries he sustained, which included loss of consciousness, a broken nose, a broken orbital socket, and a cut on his ear that required stitches. But Cantrell recalled that on the afternoon of December 20, 2022, Liech was agitated as he stood outside the pantry door and was demanding to be let into his cell. Cantrell told Liech that he would help him after he finished an email on behalf of another inmate. Liech continued demanding to be let into his cell, and because Liech was standing with one foot over the red line and had not been invited into the pantry office, Cantrell gave Liech "several directives to go stand by the window." Liech refused these commands. Cantrell recalled standing up from his chair when Liech said something that Cantrell perceived as a threat, but Cantrell could not recall exactly what was said, and he did not recall much beyond that point. Cantrell had no recollection of being punched by Liech or of unholstering or deploying his pepper spray.

(d) Lane's Testimony

Lane testified that on December 20, 2022, Cantrell was getting a lot of requests from inmates. At approximately 3 p.m., Lane and Cantrell were both seated inside the pantry office, working on a request from another inmate, when Liech approached the open doorway.

According to Lane, Liech demanded that Cantrell unlock his cell and locker immediately. Cantrell told Liech he was working on an email for another inmate and would help Cantrell when he was finished. Lane said that Liech and Cantrell then bickered back and forth. Liech appeared "flustered and irritated" at first, but as time passed, his demeanor turned more "angry and threatening." Lane testified that Liech was crossing the red line on the floor and was refusing Cantrell's commands to back away from the door.

Lane testified that eventually, Cantrell stood up from his computer and threatened to "call for holding" if Liech did not back away. This prompted Liech to comment that Cantrell was "nothing without his badge," which Lane perceived as Liech's way of "letting [Cantrell] know that he wanted to hit him but [was] not going to because of the repercussions." Lane said that Cantrell appeared frightened by Liech's comment and responded by unholstering his pepper spray, holding it at his hip, and announcing that he would use the spray if Liech did not back away. Lane testified that Liech's body language, his anger, and his refusal to comply with "multiple directives to leave" gave Cantrell "good cause to be worried that [the situation] would escalate." According to Lane, Cantrell's act of unholstering his pepper spray "triggered something" in Liech, who repeatedly called Cantrell a derogatory name and then lunged into the office and punched Cantrell once in the face.

Lane said that after Liech threw the punch, Cantrell deployed his pepper spray. Liech then punched Cantrell in the face a second time before fleeing from the office. Cantrell wobbled

and fell to the office floor; Lane closed the office door and used a silent alarm to call for help.

### (e) Testimony of Liech and Brown

Liech testified that around 3 p.m., he approached the pantry office and asked Cantrell to open his locker. According to Liech, Cantrell remained seated at his computer and ordered Liech to "back off," but Liech ignored that order.

Brown testified that he watched this interaction and thought that both Liech and Cantrell seemed "frustrated." Although Brown was not paying attention to what Liech and Cantrell were saying, he noticed the volume of their voices escalating.

According to both Liech and Brown, Cantrell eventually stood up from his chair and threatened to use pepper spray on Liech. Both inmates testified that Cantrell eventually unholstered his pepper spray and deployed it without further warning.

Both inmates testified about the video footage that showed Liech in a "fighting stance" just before he lunged into the office. According to Brown, Liech assumed the fighting stance as soon as Cantrell unholstered the pepper spray. Liech denied this and testified that when he assumed a fighting stance, Cantrell had already deployed the pepper spray. However, both Liech and Brown agreed that once the pepper spray was deployed, Liech entered the office and punched Cantrell twice in the face. Liech described these punches as "reaction[ary]," and he testified that after being sprayed, he was unable to see and ran out of the office wiping his face with his shirt.

### 2. Jury Instructions, Verdict, and Sentencing

During the jury instruction conference, Liech submitted a proposed instruction on self-defense. Liech told the court his proposed instruction was "taken in substance" from three sources: (1) Neb. Rev. Stat. § 28-1409 (Reissue 2016), which

governs the availability of justification defenses generally; (2) Neb. Rev. Stat. § 28-1413 (Reissue 2016), which governs when certain law enforcement officers may claim justification; and (3) the pattern jury instruction on self-defense.[1]

In arguing that the evidence supported a self-defense instruction, Liech acknowledged there was a factual dispute about whether he was the initial aggressor. But he argued that the evidence would allow a reasonable jury to conclude Cantrell deployed his pepper spray first and that doing so amounted to unlawful force, which would therefore allow the jury to conclude that Liech's use of force against Cantrell was justified under § 28-1409.

The State disagreed. It argued that it did not matter whether the pepper spray was deployed before or after Liech punched Cantrell, because there was no evidence that Cantrell's use of pepper spray was unlawful and the evidence therefore did not support a self-defense instruction under § 28-1409. The State also argued that under the reasoning of *State v. Urbano*,[2] the evidence did not support a legally cognizable claim of self-defense, because Liech unjustifiably placed himself in harm's way by refusing Cantrell's lawful commands to back away from the pantry office. The court agreed with the State's arguments, and it refused to give a self-defense instruction.

The case was submitted to the jury, which returned a guilty verdict. The court accepted the verdict and later sentenced Liech to a prison term of 3 to 3 years consecutive to his current imprisonment. Liech filed a timely notice of appeal, and we moved the appeal to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Liech assigns (1) the district court erred by refusing to give his proposed jury instruction on self-defense, (2) the evidence

---

[1] See NJI2d Crim. 7.1.

[2] *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

was insufficient to support his conviction, and (3) the court abused its discretion by imposing an excessive sentence.

## III. STANDARD OF REVIEW

[1] Whether jury instructions given by a trial court are correct is a question of law.[3]

[2] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[4] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

[3,4] An appellate court will also not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[6] An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.[7]

## IV. ANALYSIS

### 1. Self-Defense Instruction

[5] Liech argues the district court erred in refusing to give his proposed jury instruction on self-defense. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the

---

[3] *State v. Gonzalez*, 313 Neb. 520, 985 N.W.2d 22 (2023).

[4] *State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025). See *State v. Kruger, ante* p. 361, 27 N.W.3d 398 (2025).

[5] *Id.*

[6] *Hagens, supra* note 4.

[7] *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[8] On this record, the second factor is dispositive and we need not address the others.[9] We therefore express no opinion on whether the instruction tendered by Liech was a correct statement of the law.

[6,7] In Nebraska, self-defense is a statutorily defined affirmative defense.[10] Section 28-1409(1) provides, in relevant part, that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." And, in relevant part, the justification statutes define "[u]nlawful force" to mean "force, including confinement, which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort."[11] Our cases recognize that "[i]t is only *unlawful* force directed at a defendant which provides a justifiable basis for self-defense."[12]

[8-10] The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense.[13] When the defendant has produced sufficient evidence to raise the defense, the issue is then one

---

[8] *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

[9] *State v. Case*, 304 Neb. 829, 842, 937 N.W.2d 216, 226 (2020) (when evidence does not warrant self-defense instruction, appellate court "need not consider whether the instruction was a correct statement of the law or whether [defendant] was prejudiced by the court's refusal to give the instruction").

[10] *State v. Case, supra* note 9.

[11] Neb. Rev. Stat. § 28-1406(1) (Reissue 2016).

[12] *Urbano, supra* note 2, 256 Neb. at 201, 589 N.W.2d at 151 (emphasis in original).

[13] *Urbano, supra* note 2; *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997).

which the State must disprove.[14] But if the trial evidence does not support a claim of self-defense, the jury should not be instructed on it.[15] We have interpreted § 28-1409 to mean that "'to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force [and] the force used in defense must be immediately necessary and justified under the circumstances.'"[16]

[11-14] We have often said that a trial court must instruct the jury on self-defense "when there is any evidence adduced which raises a legally cognizable claim of self-defense."[17] Elaborating on this principle, we have explained that "only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense."[18] In other words, it is only when the evidence does not support a legally cognizable claim of self-defense, or when the evidence is so lacking in probative value that it constitutes a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense.[19] To determine whether the evidence supports a legally cognizable claim of self-defense under Nebraska law, a trial court assesses the evidence "without deciding factual issues."[20]

[15] Because the force used by a defendant must be "immediately necessary and justified under the circumstances,"[21]

---

[14] *Id.*

[15] See *id.* Accord *State v. Adams, ante* p. 316, 27 N.W.3d 23 (2025).

[16] *Adams, supra* note 15, ante at 336, 27 N.W.3d at 41 (quoting *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025)).

[17] *Urbano, supra* note 2, 256 Neb. at 201, 589 N.W.2d at 151. Accord, *Case, supra* note 9; *Kinser, supra* note 13.

[18] *Case, supra* note 9, 304 Neb. at 842, 937 N.W.2d at 225.

[19] See, *Case, supra* note 9; *Kinser, supra* note 13.

[20] *Case, supra* note 9, 304 Neb. at 843, 937 N.W.2d at 226.

[21] See *Rezac, supra* note 16, 318 Neb. at 371, 15 N.W.3d at 721. Accord, *State v. Rieker*, 318 Neb. 238, 14 N.W.3d 855 (2025); *Johnson, supra* note 8; *Case, supra* note 9; *Urbano, supra* note 2.

our cases have recognized there are certain factual circumstances that generally will not support a legally cognizable claim of self-defense. For instance, Nebraska has long followed the rule that "a defendant who is the initial aggressor is not entitled to a self-defense instruction."[22] Conversely, we have observed that a determination of whether the victim was the first aggressor is an essential element of a self-defense claim.[23]

Liech acknowledges trial testimony from the State's witnesses that he was the initial aggressor, but he points to conflicting testimony on that issue, and he argues that when the evidence is in dispute on a material element of self-defense, it presents a fact issue for the jury to determine.[24] He also argues that, on this record, there was a factual dispute for the jury regarding whether Cantrell's use of pepper spray was lawful or unlawful. But as we explain next, these factual disputes ultimately make no difference to determining whether Liech was entitled to a self-defense instruction, because the undisputed evidence established a more fundamental reason why Liech cannot assert a cognizable claim of self-defense.

[16] Nebraska has long recognized the rule that "[i]f a defendant has unjustifiably placed himself or herself in harm's way, a court may properly find that such facts do not support a lawful claim of self-defense."[25] We have applied

---

[22] *State v. Valadez*, 313 Neb. 902, 905, 987 N.W.2d 268, 270-71 (2023). Accord, *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011); *State v. Eagle Thunder*, 201 Neb. 206, 266 N.W.2d 755 (1978).

[23] See, e.g., *State v. Kruger, supra* note 4; *State v. Matthews*, 289 Neb. 184, 854 N.W.2d 576 (2014); *Kinser, supra* note 13.

[24] See *Kinser, supra* note 13 (holding jury, and not trial court, must resolve fact questions concerning whether defendant acted in self-defense within meaning of law).

[25] *Urbano, supra* note 2, 256 Neb. at 201, 589 N.W.2d at 151. See, also, *Case, supra* note 9; *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998).

this rule under a variety of circumstances to hold that the evidence did not support a legally cognizable claim of self-defense.[26] Most apt is our application of the rule in *Urbano*, a case that also involved an inmate's use of force against a correctional officer.[27]

In *Urbano*, correctional officers instructed an inmate to take his prescribed medication, but he refused and began shouting and threatening the officers. The inmate was warned that if he did not comply, correctional staff would forcibly administer the medication. When the inmate continued to refuse the medication, a team of correctional officers conducted a "forced cell move"[28] or "takedown"[29] of the inmate and forcibly administered the medication. During that procedure, the inmate bit one of the correctional officers on the arm, causing bodily injury. The inmate was charged with assault by a confined person, in violation of § 28-932 (Reissue 1995), and the case was tried to a jury.

The inmate in *Urbano* claimed he was justified in biting the correctional officer because he believed the force being used to administer the medication was "excessive."[30] He proffered a jury instruction on self-defense, which the trial court refused, reasoning that the medication was forcibly administered pursuant to a court order and that there was no evidence the correctional officers' use of force was unlawful. The jury returned a guilty verdict, and the inmate appealed. We found no error in refusing to instruct on self-defense.

---

[26] See, e.g., *Case, supra* note 9 (applying rule when defendant unjustifiably placed himself in danger by leaving safety of his jail cell to confront another inmate); *Marshall, supra* note 25 (applying rule when defendant unjustifiably placed himself in danger by leaving safety of his house and confronting men when he knew doing so would likely result in violence).

[27] *Urbano, supra* note 2.

[28] *Id.* at 202, 589 N.W.2d at 151.

[29] *Id.*

[30] *Id.* at 201, 589 N.W.2d at 151.

*Urbano* recited the rule that "[i]f a defendant has unjusti-fiably placed himself or herself in harm's way, a court may properly find that such facts do not support a lawful claim of self-defense."[31] We agreed with the trial court's conclusion that the evidence at trial did not show the forced cell move was unlawful, but we also emphasized the undisputed evi-dence showing that the forced cell move "was initiated only after [the inmate] refused to take medication which he knew was court ordered"[32] and was necessitated only because the inmate continued to physically resist a lawful request. Under such circumstances, we concluded that the evidence did not support a legally cognizable claim of self-defense.

We reached a similar conclusion in *State v. Case*.[33] There, the defendant was charged with assault by a confined person after a physical altercation with another inmate. The trial court denied the defendant's request for a self-defense instruction on two alternative grounds: that the defendant was the initial aggressor and that the defendant had unjustifiably placed him-self in harm's way by voluntarily leaving the safety of his cell and confronting the victim.

On appeal, the defendant in *Case* argued he was entitled to a self-defense instruction because there was a factual dispute as to whether he, or the victim, was the initial aggressor. We observed that although a factual dispute over the identity of the initial aggressor "could be part of a legally cognizable case of self-defense,"[34] we did not have to decide that issue in *Case*, because the undisputed evidence fit squarely within the rule from *Urbano*. We explained that the undisputed facts showed the defendant voluntarily left his cell and walked directly up to the victim and confronted him. We reasoned

---

[31] *Id.*

[32] *Id.* at 202, 589 N.W.2d at 152.

[33] *Case, supra* note 9.

[34] *Id.* at 843, 937 N.W.2d at 226.

that because there was no evidence the inmate was prevented from remaining safely in his cell, "he unjustifiably placed himself in harm's way, and such facts do not support a legally cognizable theory of self-defense."[35]

Similar to the evidence in *Urbano* and *Case*, the evidence here was undisputed that Liech could have avoided Cantrell's use of force (the deployment of pepper spray) by complying with Cantrell's repeated lawful commands to back away from the pantry office door. But Liech ignored those lawful commands, even after being notified that his continued noncompliance would result in the deployment of pepper spray. On these facts, Liech voluntarily and unjustifiably placed himself in harm's way through his verbal and physical noncompliance with Cantrell's lawful request, and under our established case law, such facts will not support a legally cognizable claim of self-defense.[36] And application of this settled rule does not depend on determining the identity of the initial aggressor, or on showing that the victim used unlawful force.[37]

Because the trial court did not err in concluding that the undisputed evidence did not support a cognizable claim of self-defense,[38] we reject Liech's first assignment of error.

## 2. SUFFICIENCY OF EVIDENCE

[17] Liech next assigns that the evidence was not sufficient to support his conviction for assault by a confined person, in violation of § 28-932 (Reissue 2016). When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

---

[35] *Id.* at 844, 937 N.W.2d at 227.

[36] *Urbano, supra* note 2. See, also, *Case, supra* note 9; *Marshall, supra* note 25.

[37] See, e.g., *Case, supra* note 9.

[38] *Id.*

of fact could have found the essential elements of the crime beyond a reasonable doubt.[39]

The essential elements of assault by a confined person are found in § 28-932, which provides in relevant part:

> (1) Any person (a)(i) who is legally confined in a jail or an adult correctional or penal institution . . . and (b) who intentionally, knowingly, or recklessly causes bodily injury to another person shall be guilty of a Class IIIA felony, except that if a deadly or dangerous weapon is used to commit such assault, he or she shall be guilty of a Class IIA felony.

Liech does not dispute that the State proved, beyond a reasonable doubt, that he caused bodily injury to Cantrell and that he did so while legally confined in an adult correctional or penal institution. But he contends the evidence adduced at trial was insufficient to prove that he intentionally, knowingly, or recklessly caused bodily injury to Cantrell. He relies on his testimony that when he punched Cantrell, it was a "reaction[ary]" response to the deployment of pepper spray, and he argues this was "a reaction that he did not have time to think about beforehand."[40]

[18] When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.[41] And viewing the evidence in the light most favorable to the prosecution, we see ample circumstantial evidence to allow a rational trier of fact to find beyond a reasonable doubt that Liech intentionally, knowingly, or recklessly caused bodily injury to Cantrell. This includes evidence that Liech assumed a fighting stance before lunging into the office and punching Cantrell in the face with a closed fist,

---

[39] *Case, supra* note 9.

[40] Brief for appellant at 25.

[41] *Adams, supra* note 15.

evidence that Liech made threatening and derogatory remarks to Cantrell before punching him, and evidence that Liech punched Cantrell in the face not once, but twice, and with sufficient force to cause loss of consciousness, a broken nose, and a broken orbital socket. Liech's second assignment of error is refuted by the record.

### 3. Excessive Sentence

In his final assignment of error, Liech contends the trial court abused its discretion by imposing an excessive sentence. Assault by a confined person is a Class IIIA felony,[42] which carries no minimum term of imprisonment and is subject to a maximum term of 3 years' imprisonment.[43] Liech's sentence of 3 to 3 years' imprisonment was therefore within statutory limits, and he does not contend otherwise.

[19] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[44] An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.[45]

Here, the record demonstrates that before imposing the sentence, the court stated it had reviewed the information in the presentence investigation report, it had considered remarks made at sentencing, and it had considered all the relevant sentencing factors. On appeal, Leach does not contend the

---

[42] See § 28-932.

[43] Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024).

[44] *Rezac, supra* note 16.

[45] *Alkazahy, supra* note 7; *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

trial court failed to consider the relevant sentencing factors,[46] nor does he contend the court made its decision based on improper considerations. Instead, he cites the general principle that a sentence "ought not exceed the minimum period consistent with protection of the public, gravity of the offense, and rehabilitative needs of the defendant,"[47] and he argues that his 3- to 3-year sentence is "beyond the minimum period necessary"[48] to protect the public and meet his rehabilitative needs. He also argues that the sentencing court did not sufficiently consider the "significant institutional consequences"[49] imposed by the Department of Correctional Services because of his misconduct relating to the assault, including the disciplinary loss of accrued good time.

[20] We understand Liech's argument to be asking us to reweigh the various sentencing factors, and we decline his request. It is not the proper function of an appellate court to conduct a de novo review or engage in a reweighing of the sentencing factors in the record.[50] Because we see no abuse of discretion in the sentence imposed, we reject Liech's final assignment of error.

## V. CONCLUSION

Finding no merit to the assignments of error raised on appeal, we affirm the district court's judgment.

AFFIRMED.

FREUDENBERG and BERGEVIN, JJ., not participating.

---

[46] See *State v. Sutton*, 319 Neb. 581, 612, 24 N.W.3d 43, 68 (2025) (relevant sentencing factors customarily include "the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime").

[47] *State v. Haynie*, 239 Neb. 478, 491, 476 N.W.2d 905, 914 (1991).

[48] Brief for appellant at 19.

[49] *Id*. at 28.

[50] See *Starks, supra* note 45.